Plaintiffs-appellants Scott Dowell and Susan Dowell appeal the July 23, 1998 Judgment Entry of the Stark County Court of Common Pleas. Defendants-appellees are the City of North Canton and Philip Rousch (hereinafter the "City").
 STATEMENT OF THE FACTS AND CASE
This case arises out of the installation and maintenance of the storm sewer system in the Sturbridge Village Allotment No. 2 in the City of North Canton. The Sturbridge Village Allotment No. 2 was platted and developed by Kauth Custom Builder and Developer, Inc.[1] (hereinafter "Kauth"). The drainage and construction of the storm sewer system was developed by Cooper and Associates for Kauth.[2] At some point, which is not clear from the briefs, the Sturbridge Village Allotment No. 2 was annexed by the City of North Canton.
As part of the annexation process, the City approved the Cooper and Associates design for the construction of the drainage and storm sewer system as contained on the plat and the plans for the allotment. However, when Kauth installed the system, it changed the design of the storm sewer from that which was shown on the approved plat. After installation of the storm sewer, appellants' property was flooded with water from the drainage system and blanketed with excess dirt and silt. Appellants immediately informed the City installation of the drainage system created a standing water problem on their property.
In the original design, a 24 inch storm sewer ran in a north-south direction for approximately 150 feet. After the 150 foot length of pipe, the sewer changed direction, using the same 24 inch pipe, to a westerly slant for another 50 feet. This pipe then opened to a 700 foot swale. The record is not clear as to the exact location of the swale, although it appears it would be on or near appellants' property.
However, as installed, the 24 inch pipe did not change direction. Instead, the pipe ran more or less in a straight line, in a southwesterly direction for approximately 400 feet. The 24 inch pipe emptied into an open swale immediately adjacent to the appellant's property. Again the record is not clear whether this is the same swale location as contemplated in the original design.
Appellants' property is shaped roughly like a rectangle. The northern portion of the property contains the house and sits at a higher elevation than the southern portion of the property. The southern portion of the property has been designated as a federal flood plane. Further, a 40 foot strip, running the length of appellants property from east to west in the southern most portion of the parcel is a drainage easement for the benefit of the City. Each property in both the Sturbridge Allotment Number 1 and the Sturbridge Allotment Number 2 has the same forty foot drainage easement. This 40 foot strip, apparently containing the swale or some portion thereof, gradually slopes downward in a southwesterly direction toward the west branch of the Nimishillan Creek.
A 17 inch outlet pipe to the creek assisted in draining the swale. The record is also unclear as to the exact location of this drainage pipe, however, it is not physically attached to the 24 inch pipe emptying directly next to appellants' property. The silt deposited on appellants' property, which was delivered by the redesigned storm sewer system, clogged the 17 inch outlet pipe, thereby preventing drainage into the Nimishillan creek and causing an increase in flooding on appellants' property.
Philip Rousch, the North Canton City Engineer and appellee herein, and John Boyajian, the former director of administration for North Canton, inspected the public drainage easement which was the 40 foot strip at the southern most portion of appellants' property. Rousch and Boyajian determined the drainage problems were caused by the downward slope between the outlet of the 24 inch pipe and the outlet of the drainage easement, which was the 17 inch pipe draining into Nimishillan Creek.
The City of North Canton undertook a public improvement to the outlet emptying from the drainage easement to the Nimishillan Creek in an attempt to facilitate better drainage in the easement area. In September of 1993, the City replaced the 17 inch outlet pipe with two 15 inch pipes. The City also redirected the outlet of another pipe, apparently also draining on or near appellants' property, in an effort to reduce the amount of drainage water onto appellants' property. Unfortunately, this did not alleviate the problem.
Appellants continued to attend City council meetings and request the City correct the drainage problems. Appellants claim after one such counsel meeting in January 1993, the City agreed to clean the silt from the easement on their property. Appellants further claim on October 25, 1993, in a private meeting held after the public counsel meeting, the City agreed to appropriate money for the installation of a multiple pipe system storm sewer system which would remedy the standing water problem. In return, appellants agreed not to file a lawsuit. Appellant Scott Dowell's affidavit states the City assured appellants the installation would begin in the early spring after the army corps of engineers approved the multiple pipe system plan.
On June 28, 1994, the City informed appellants they would be required to sign a hold harmless agreement before the City would install the multiple pipe system. Appellants refused. To date, the City has not installed the multiple pipe system. The City has also failed to clean the silt from its easement. Water continues to stand upon the appellants' property.
On November 26, 1996, appellants filed a complaint against the City of North Canton, Phillip Rousch and Kauth. The complaint alleges breach of contract, nuisance, and negligence against the City of North Canton; and negligence in the approval of the design and construction of the public drainage system and design and construction of the storm and surface water drainage system against Phillip Rousch.
Appellees filed a motion for summary judgment against appellants. The trial court, in a June 25, 1998 Judgment Entry, overruled the motion, finding genuine issue of material fact with regard to the negligence of the parties. Appellees filed a motion for reconsideration of the trial court's judgment entry. On July 23, 1998, the trial court reversed its prior ruling and granted summary judgment in appellees' favor holding the City was immune from suit pursuant to political subdivision tort immunity. The July 23, 1998 Judgment Entry also granted summary judgment in favor of appellees on the breach of contract claim.
Plaintiff filed a timely notice of appeal and this Court dismissed the appeal without prejudice for lack of a final appealable order. In an October 16, 1998 Judgment Entry, the trial court found there was no just reason for delay. It is from these judgment entries appellants prosecute their appeal, assigning the following as error:
 I. THE CITY OF NORTH CANTON IS NOT IMMUNE FROM LIABILITY UNDER THE DOCTRINE OF SOVEREIGN IMMUNITY.
 II. THE CITY OF NORTH CANTON IS ONE OF THE PARTIES RESPONSIBLE FOR THE STORM WATER PROBLEM ON PLAINTIFFS' PROPERTY.
 III. THE CITY OF NORTH CANTON FORMED A CONTRACT WITH PLAINTIFF TO CORRECT THE WATER PROBLEMS BUT THE CITY HAS BREACHED ITS CONTRACT WITH PLAINTIFF.
 I
In their first assignment of error, appellants maintain the trial court erred in granting summary judgment in favor of the City under the doctrine of political subdivision tort immunity.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hau (1997), 77 Ohio St.3d 421, 429, citingDresher v. Burt (1996), 75 Ohio St.3d 280.
It is based upon this standard we review appellant's assignment of error.
R.C. Chapter 2744 provides a three-tiered analysis for determining the availability of sovereign immunity to political subdivisions. R.C. 2744.02(A)(1) provides a political subdivision is generally not liable for injury, death or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of that political subdivision. This provision is generally referred to as the "blanket immunity" provision. R.C. 2744.03 provides exceptions to the blanket immunity. If an exception does apply, R.C. 2744.04 provides "defenses" to potential liabilities. These defenses act in some instances to reinstate immunity rather than providing a "defense" as the term is commonly used. Before any determination can be made regarding applicable exceptions to the blanket immunity provision, this Court must first determine whether the actions were "governmental" or "proprietary".
A "governmental function" is defined in R.C. 2744.01 (C) as follows:
 (C)(1) "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
 (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
* * *
 (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.
 (2) A "governmental function" includes, but is not limited to, the following:
* * *
 (e) The regulation of the use of, and the maintenance and repair of * * * aqueducts, and public grounds;
* * *
 (l) The provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system;
* * *
(r) Flood control measures;
* * *
"Proprietary function" is defined as:
 (G)(1) "Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:
 (a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;
 (b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.
 (2) A "proprietary function" includes, but is not limited to, the following:
* * *
 (d) The maintenance, destruction, operation, and upkeep of a sewer system;
R.C. 2744.01 (G).
The statute does not define "sewer system" or "aqueduct". Webster's II New College Dictionary defines "aqueduct" on p. 57 as 1) a pipe or channel for transporting water from a remote source, usually by gravity; 2) a bridge like structure supporting a conduit or canal passing over a river or low ground; 3) a fluid passage or channel. "Sewer" is defined as "a manmade, usually underground conduit for carrying off sewage or rainwater." Webster's II New College Dictionary(1995), at p. 1012.
Based upon the definitions contained in R.C.2744.01(C)(2)(e),(l), and (r), we find the City was engaged in a governmental function.[3] R.C. 2744.02(A)(1) provides political subdivisions immunity in tort actions in connection with governmental or proprietary functions. R.C. 2744.02(B) provides five exceptions which would remove the cloak of immunity granted in R.C. 2744.02(A).
The first exception removes immunity where the loss is caused by the negligent operation of a motor vehicle by an employee of the political subdivision. R.C. 2744.02(B)(1). The second exception removes immunity where losses caused by the negligent performance of acts of employees with respect to proprietary functions. R.C. 2744.02(B)(2). The third exception applies in situations where a political subdivision fails to keep public roads in repair. R.C. 2744.02(B)(3). The fourth exception applies for losses caused by physical defects on or within the grounds of a public building. R.C. 2744.02(B(4). Finally, the protections of immunity are removed where liability is a expressly imposed on political subdivision by statute. Because none of these exceptions apply to the installation of the storm sewer, the blanket immunity remains intact. The City is immune from liability in tort.
Appellants' first assignment of error is overruled.
 II
In the second assignment of error, appellants maintain the City is one of the parties responsible for the storm water problem because it allowed Kauth to install a pipe onto the storm sewer system without the necessary approval or permits. In light of our discussion under assignment of error number one, this assignment of error is overruled.
 III
In the third assignment of error, appellants argue the trial court erred in granting appellee's motion for summary judgment on the breach of contract claim. We agree.
A contract consists of an offer, an acceptance, and consideration. See, Tersigni v. Gen. Tire, Inc. (1993), 91 Ohio App.3d 757,760.
In its motion for summary judgment, the City claimed there was no meeting of the minds between the contracting parties and therefore, no contract. The motion also attacked appellants' failure to set forth any evidence of consideration supporting the contract. In response, appellants' point to the record, specifically the affidavit of Scott Dowell which averred the City agreed to appropriate money for the installation of a multiple pipe drainage system. In return, appellants agreed to forbear filing a lawsuit.
In its July 23, 1998 Judgment Entry, the trial court sustained the motion for summary judgment on the contract claim reasoning:
 The allegation of a contractual relationship on behalf of the City and plaintiffs as authorized by the legislative authority of the City is unsupported.
Appellee cites State ex rel. Gordon v. Taylor (1948), 149 Ohio St. 427, paragraph one of the syllabus for the proposition that a municipal corporation cannot enter into contracts delegating legislative or governmental powers. We find the facts in the matter sub judice do not fall within the purview of this syllabus.
Appellants claim appellee agreed to correct and repair the storm sewer in return for appellants' promise not to file a lawsuit to compel such an action. We find an agreement by the City engineer and City director of administration to maintain and/or repair the storm sewer is not a delegation of legislative or governmental power. As discussed supra,
appellants may not force the City into any decision to repair. However, once a complaint has been made and injury suffered and a decision to repair has been made, this Court sees no reason why the parties might not enter into an agreement, with a benefit to both parties, detailing the repair.
Appellee's motion for summary judgment also maintained individual members of City Council may not act independently to enter into any agreement binding the City. However, as discussed, supra, there is no indication the City would have to pass legislation to maintain an existing storm sewer. Accordingly, the City did not meet its burden underDresher, supra.
For these reasons appellants' third assignment of error is sustained.
The judgment of the Stark County Court of Common Pleas is hereby affirmed in part and reversed in part. This case is remanded to the trial court for further proceedings consistent with this opinion and the law.
By: Hoffman, J., Gwin, P.J. and Reader, J. concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed in part, reversed in part and remanded. Costs assessed to appellees.
---------------------------
---------------------------
 --------------------------- JUDGES
[1] Kauth Custom Builder and Developer, Inc. is a defendant in the underlying case. It is not a party to this appeal.
[2] Cooper and Associates is not a party to this appeal.
[3] Assuming arguendo North Canton's activities could be considered a proprietary function, sovereign immunity would still apply. R.C. 2744.02(B)(2) would remove the blanket immunity, but the city would have a "defense", which would statutorily reinstate the immunity. See R.C. 2744.03(A)(3) and (A)(5).